DEVIN DERHAM-BURK, #104353
CHAPTER 13 STANDING TRUSTEE
DEVIN L. PACE #256514
NANETTE DUMAS #148261
JANE Z. BOHRER #243692
P.O. BOX 50013
SAN JOSE, CA 95150-0013

TELEPHONE:    (408) 354-4413
FACSIMILE:    (408) 354-5513

UNITED STATES BANKRUPTCY COURT
NORTHERN DISTRICT OF CALIFORNIA - DIVISION 5

IN RE:

GUILLERMO AZUA, JR. and
JACQUELINE AZUA,

Debtors.

CHAPTER 13 CASE NO. 10-57746 MEH

AMENDED OBJECTION OF TRUSTEE
TO DEBTORS' MOTION TO MODIFY
CHAPTER 13 PLAN

Date:   None Set
Time:   None Set
Judge:  Hon. M. Elaine Hammond

Devin Derham-Burk, the Chapter 13 Standing Trustee ("Trustee"), hereby amends her previously filed Objection to Debtors' Motion to Modify Chapter 13 Plan and Request for Hearing that she filed on May 21, 2015. [Docket # 70]. The Trustee's original objection points out that Debtors' motion to modify fails to request any changes to Debtors' confirmed plan ("Plan") [Docket # 16] and that Debtors need to file an amended motion setting forth the specific changes that they want to make to the Plan. However, it appears that the failure to request any change may have been inadvertent. Debtors' statement of reasons for requesting some unidentified modification suggests that Debtors may want to revise their Plan's vesting provision from one that re-vested property of the estate in the Debtors immediately upon confirmation to

one that delays the re-vesting until the time of discharge or dismissal. Assuming that is Debtors' intent, the motion to modify still should be denied. A modification to change a debtor's property vesting election is not authorized under the Bankruptcy Code. Further, even if it were, there is no evidence that a change in the vesting effect of the Plan is warranted under the circumstances. In the interest of efficiency, the Trustee is raising this issue before Debtors amend their motion to correct the technical failure to specify any changes to the terms of the confirmed Plan.

In support of her position, the Trustee states as follows:

## Factual Background

On July 27, 2010, debtors Guillermo and Jacqueline Azua ("Debtors") filed a chapter 13 petition and a proposed plan of reorganization through their original counsel, T. Kevin Dougherty.[1] [Docket # 1 and # 5]. When they filed for bankruptcy protection, Debtors owned a home located at 1908 Chelsea Court in Salinas, California ("Property"). On Schedule A, Debtors listed a petition date value for the Property of $640,000. The Property is encumbered by two deeds of trust. According to their Schedules, Debtors owe JP Morgan Chase Bank ("Chase") $674,639 pursuant to a note that is secured by a first deed of trust against the Property. Debtors also scheduled a second deed of trust, also in favor of Chase, securing debt in the amount of $78,751. According to the proofs of claim on file, the petition date debt secured by the first deed of trust against the Property is $694,681, slightly more than the scheduled amount. No proof of claim has been filed with respect to the debt secured by the second deed of trust.

Debtors filed an amended chapter 13 plan on September 20, 2010. [Docket # 16]. The Court confirmed the amended Plan on December 29, 2010. [Docket # 32]. Debtors' Plan

---

[1] During this case, Mr. Dougherty retired from private practice. Approximately a month ago, on May 12, 2015, attorney Ralph Guenther substituted in as Debtors' counsel of record and filed Debtors' motion to modify their Plan. [Docket # 67 and # 68].

AZUA 10-57746 MEH    AMENDED OBJ. TO DEBTORS' MOTION TO MODIFY PLAN Page 2 of 10

provides for Debtors to pay the Trustee $1,180 for the first month and $1,750 per month thereafter, but does not provide for any distribution to Debtors' general unsecured creditors. [Docket # 16]. Section 4 of the Plan treats Chase as fully secured with Debtors directly making on-going payments with respect to the debt secured by both the first and second deeds of trust. The Plan does not anticipate any motions to value collateral or avoid liens and none was filed or determined prior to confirmation. The Plan further provides that property of the estate re-vests in Debtors upon confirmation of the Plan.

Generally, Debtors have kept current with their Plan payments. It has been fifty-eight months since their first payment came due, and Debtors are on the verge of successfully completing their Plan.

On May 12, 2015, Debtors' current counsel, attorney Ralph Guenther, filed a motion to modify Debtors' confirmed Plan ("Modification Motion"). [Docket # 68]. Debtors' Modification Motion does not request any specific modifications of Debtors' Plan. Nevertheless, paragraph 5 of the Modification Motion states:

> Debtors' reason(s) for requesting the above modification [none set forth] are: **Debtors elect to revest the real property located at 1908 Chelsea Ct., Salinas, California 93905 to the bankruptcy estate. Debtors are filing a motion to avoid the lien by Chase (Acct #4781).**

[Docket # 68 (bold in original)]. On May 22, 2015, Debtors filed a Motion to Value Security and Avoid Lien of JPMorgan Chase Bank, N.A., along with a Notice of Opportunity for Hearing, which seeks to value and strip Chase's junior lien from the Property. [Docket # 71 and # 72].

For the reasons explained below, the Bankruptcy Code does not authorize a modification to revest the Property back into the estate. As a result, even if Debtors had properly requested a revision to the vesting election contained in their Plan, the Motion cannot be granted. Moreover,

even if the Bankruptcy Code allowed Debtors to change their vesting election, here, Debtors have not demonstrated that such a modification would be warranted under the circumstances. As a result, the Modification Motion should be denied both as to form and substance.

**Legal Analysis**

Bankruptcy Code § 1329 controls the modification of a confirmed chapter 13 plan and places several limitations on that process. For example, even though debtors, trustees and unsecured creditors have the right to request post-confirmation plan modifications, relief must be requested before completion of the confirmed plan. 11 U.S.C. § 1329(a). Additionally, the types of modifications permitted under § 1329 are limited to those that: 1) increase or reduce the amount of payments on claims of a particular class; 2) extend or reduce the time for such payments; 3) alter the amount of the distribution to a creditor whose claim is provided for by the plan to account for payments on the claim outside of the plan; or, 4) reduce amounts to be paid under the plan by actual amounts expended by the debtor for the purchase of health insurance, if certain additional criteria are satisfied. 11 U.S.C. §§ 1329(a)(1)-(4); *Powers v. Savage (In re Powers)*, 202 B.R. 618, 622 (B.A.P. 9th Cir. 1996); *In re Pasley*, 507 B.R. 312, 319 (Bankr. E.D. Cal. 2014).

Section 1329(b)(1) further requires that proposed post-confirmation modifications satisfy many of the same standards that govern the initial confirmation of a chapter 13 plan. *See* 11 U.S.C. § 1329(b)(1) (providing that §§ 1322(a), 1322(b) and 1323(c), as well as the requirements of § 1325(a) apply to post-confirmation plan modifications); *Mattson v. Howe (In re Mattson)*, 468 B.R. 361, 367 (B.A.P. 9th Cir. 2012)(when a proposed modification falls within the parameters of § 1329(a), the court "must then decide whether the proposed modification

complies with § 1329(b)(1)"). Finally, payments under a modified plan may not extend beyond the commitment period applicable under § 1325(b)(1)(B), unless the court, for cause, approves a longer period (not to exceed five years). *Id*. at § 1329(c).

Even when the above statutory requirements are satisfied, every post-confirmation plan modification remains subject to the sound discretion of the court reviewing the motion to modify. *Powers*, 202 B.R. at 622. Thus, the party proposing a modification has the burden of providing sufficient evidence to demonstrate that the basis for modification is appropriate, that all statutory requirements are satisfied and that the modification should be approved. *Mattson*, 468 B.R. at 371-72; *In re Morris*, 2012 WL 2341537, at *4 (Bankr. S.D. Cal. Jun. 7, 2012); *In re Hobbs*, 2012 WL 1681981, at *2 (Bankr. C.D. Cal. May 7, 2012). Debtors, here, have not satisfied their burden.

1. <u>The Bankruptcy Code Does Not Authorize the Modification that Debtors Purport to Request</u>.

Debtors' Modification Motion offers no legal support for Debtors' apparent desire to change the vesting election contained in their confirmed Plan, and the Trustee's research discloses none. To the contrary, § 1329(a) expressly delineates just four types of post-confirmation modifications that are authorized. As the Ninth Circuit Appellate Panel consistently has recognized, the four categories, listed above and in § 1329(a)(1)-(4), are the *only* types of modifications allowed. *Mattson*, 468 B.R. at 367; *Powers*, 202 B.R. at 622 (stating that § 1329(a) limits the kinds of modifications that can be proposed). Other courts agree. *See, e.g.*, *In re Witkowski*, 16 F.3d 739, 745 (7th Cir. 1994); *In re Wills*, 2014 WL 2442275, at *3 (Bankr. C.D. Ill. May 30, 2014)(modification "may only be sought for one of the limited purposes enumerated in § 1329(a)"); *Morris*, 2012 WL 2342537, at *4. A post-confirmation modification to change a plan's vesting provision from one that re-vests property of the estate in the Debtors

immediately upon confirmation to one that delays the re-vesting until the time of discharge or dismissal is not among the four authorized categories. There is simply nothing in the Code that would authorize any request for a post-confirmation change in the vesting effect of Debtors' confirmed plan.

Similarly, Debtors' proposed post-confirmation lien-stripping motion is not within the confines of § 1329(a). While § 1329(a)(1), allows modifications that "increase or reduce the amount of payments on claims of a particular *class* provided for by the plan," that is not what Debtors propose to do. Instead, Debtors ask to eliminate the on-going direct payments to a particular *creditor* that is secured by a lien against Debtors' home. Debtors seem to want, belatedly, to reclassify the claim as unsecured via their post-confirmation motion to value collateral and avoid lien. As one court explained, albeit in the chapter 12 context, reclassification of claims via a modified plan is generally not permitted under the Code. *In re Cabral*, 2012 WL 8441317, at *8 and n.21 (Bankr. E.D. Cal. Oct. 10, 2012).

In *Cabral*, the specific issue before the court was whether the debtors' second chapter 12 case was filed in bad faith shortly after the post-confirmation voluntary dismissal of their first chapter 12 case. In their second case, the debtors intended to lien strip an undersecured claim that had been treated as secured in the first case. As part of its bad faith analysis, the court considered whether the second filing was simply an attempt to do what the debtors could not do through modification of their confirmed plan in the first case. In concluding that post-confirmation lien-stripping would not have been a permissible modification under § 1229, the court relied entirely on case law developed in the chapter 13 context, including the appellate panel decisions in *Mattson* and *Power*. *Cabral* additionally acknowledged an unpublished appellate panel decision that suggests, in dicta, that post-confirmation modifications under

§1329(a) do not include "the sort of drastic modification of rights occasioned by a post-confirmation lien-stripping motion" on previously allowed claims. *Id.*, *quoting*, *In re Eaton*, 2006 WL 6810924 (B.A.P. 9th Cir. 2006)(unpublished and to be cited only as provided in 9th Cir. BAP Rule 8024-1).

In light of the above authority, the purported modification that Debtors seem to want is not permissible. Absent authority to the contrary, the Modification Motion would have to be denied even if it had properly requested the changes that Debtors seem to want.

2. <u>There is No Evidence that the Plan, Satisfies the Liquidation Test</u>.

Even if Debtor's purported modification survived analysis under § 1329(a), here, Debtors also have not provided any evidence demonstrating that their proposed plan modification satisfies § 1329(b)(1). In part, § 1329(b)(1) makes the confirmation requirements of § 1325(a) applicable to post-confirmation plan modifications. This means, among others things, that every modified plan must satisfy the "liquidation value test." In other words, the Debtors' proposed modified plan must provide Debtors' general unsecured creditors with at least as much as they would receive if Debtors' estate were liquidated on the effective date of the plan. 11 U.S.C. at § 1325(a)(4).

For purposes of modifying a *confirmed* plan, the vast majority[2] of courts have determined that the liquidation value test must be recalculated as of the effective date of the *modified* plan. In other words, the liquidation analysis used at confirmation of the original plan is not

---

[2] The trustee recognizes that there is at least one decision holding that the original liquidation analysis controls for purposes of post-confirmation plan modifications. *See Forbes v. Forbes (In re Forbes)*, 215 B.R, 183 (B.A.P. 8th Cir. 1997)(there is only one plan and one effective date, therefore, for purposes of § 1325(a)(4), the liquidation "value as of the effective date plan" necessarily refers to the effective date of the initially confirmed plan). The Trustee believes that the more recent *Barbosa* case and its progeny, discussed herein, provide a more reasoned analysis. *Forbes* is inconsistent with § 1329(b)(2), which contemplates replacement of the original plan with the modified plan by providing that "the plan as modified becomes the plan." *Forbes* also is at odds with the legislative history of § 1329.

AZUA 10-57746 MEH         AMENDED OBJ. TO DEBTORS' MOTION TO MODIFY PLAN Page 7 of 10

controlling. Instead, the liquidation value of property of the estate is recalculated at the time of modification, thereby capturing post-petition appreciation through the effective date of the modified plan. *In re Barbosa*, 236 B.R. 540, 552-54 (Bankr. D. Mass. 1999), *affd*, *Barbosa v. Solomon*, 235 F.3d 31 (1st Cir. 2000); *In re Davenport*, 2011 WL 6098068, at *3 (Bankr. D. Kan. Dec. 7, 2011)(court granted trustee's motion to amend plan and require debtors to turnover proceeds of appreciated real property for payment to unsecured creditors); *In re Merritt*, 344 B.R, 785, 787 (Bankr. N.D. W. Va. 2006)(after debtor's real property sold for $100,000 more than its scheduled value, court denied debtors' motion to compel return of all funds in excess of amount needed to pay off original plan, and instead, ordered full payment of general unsecured creditors); *In re Morgan*, 299 B.R. 118, 123-25 (Bankr. D. Md. 2003)(noting split of authority but concluding that liquidation analysis should be done as of the date of modification); *In re Walker*, 153 B.R. 565, 568 (Bankr. D. Or. 1993) (in applying § 1325(a)(4) to confirmation of a modified plan, the liquidation value test should be applied as of the effective date of the modified plan).

The legislative history regarding § 1329(b) also supports the recalculation of the liquidation value test when a plan is modified post-confirmation. As the *Walker* court pointed out, the House Reports specifically explained,

> In applying the standards of proposed 11 U.S.C. 1325(a)(4) to the confirmation of a modified plan, "the Plan" as used in the section will be the plan as modified under this section . . . . Thus, the application of *the liquidation value test must be redetermined at the time of the confirmation of the modified plan*.

*Walker*, 153 B.R. at 568, *quoting*, H.R. Rep. No. 595, 95th Conf., 1st Sess. 431 (1977), U.S. Code Cong. & Admin. News pp. 5787, 6386 and 6387 (emphasis added). *Accord*, *In re Nott*, 269 B.R. 250, 255 (M.D. Fla. 2000)(quoting the same passage). Additionally, Judge Lundin in his chapter 13 treatise looked to the language of the Bankrutpcy Code to conclude that

Defining the effective date of the plan at modification as the effective date of the modified plan respects the language in § 1329(b)(2) that substitutes the modified plan for the plan as originally confirmed. This interpretation recognizes that the passage of time between confirmation and modification changes the facts of a Chapter 13 case.

Applying the above principles to this case, Debtors have not provided the evidence needed to demonstrate that the modified plan that they appear to be proposing would pass the recalculated liquidation value test required by § 1329(b)(1). Assuming Debtors are able to return the Property to their bankruptcy estate, they must first offer some evidence regarding the current value of the Property that would allow the Trustee to perform a proper liquidation analysis of their proposed modification. As a result, even if their Modification Motion properly requested changes, Debtors have failed to satisfy their burden of establishing that any requested modification passes muster under § 1329(b). The Modification Motion should be denied.

## **Conclusion**

Debtors confirmed Plan promises to pay their debt secured by a second deed against the Property by paying Chase directly and leaving Chase's lien against their home intact. Now, Debtors seem to want to amend that promise so as to strip Chase's lien rights and to pay nothing further to Chase with respect to the junior lien. These are significant changes.

Even if Debtors amend their Modification Motion and properly request the changes that they want, before approving those changes, the Court should require Debtors to provide some authority that the Bankruptcy Code permits post-confirmation modifications of a confirmed plan's vesting election, as well as competent evidence demonstrating that Debtor's Plan, as modified, would comply with § 1329(b). The Court should further insist that Debtors demonstrate that there is some achievable benefit to any proposed modification that would warrant this Court exercising its discretion to approve an amended Modification Motion.

Because Debtors have offered no evidence to satisfy their burden in each of these respects, Debtors' Modification Motion should be denied.

WHEREFORE, for each and all of the foregoing reasons, the Trustee asks that the Court deny the Modification Motion.

June 10, 2015                                              Respectfully submitted,

                                                                                       /s/ *Jane Z. Bohrer*
                                                                                       Attorney for Chapter 13 Trustee